WILLIAMS and another, Respondents, vs. THRALL and wife, imp., Appellants.

*September 24 — December 16, 1898.*

*Entire contract: Warranty: Rescission: Damages.*

1. A contract whereby the plaintiffs, for a certain price, a part of which was to be paid on the completion of the job and a part on a later date, agreed to put a furnace into defendants' house, and guaranteed it to heat the whole house to 80° with a reasonable consumption of fuel, and further agreed that, if the furnace failed to meet the guaranty, they would replace it with one which would do so, without extra cost to defendants, and would pay any damages caused by reason of any deficiency, is *held* to be an entire contract; and the furnace having failed to meet the guaranty, and the plaintiffs, though notified, having done nothing to make it do so, they could recover nothing on such contract.

2. In the absence of anything in the contract requiring the defendants, in case the furnace failed to perform as stipulated, to rescind the contract or request the plaintiffs to remove the same or replace it by another, they were not bound to do so in order to avail themselves of the plaintiffs' failure to fully perform as a defense.

3. Under the provisions of the contract that, in case the furnace failed to perform as agreed, the plaintiffs would replace it with one that would fulfill such requirements, without extra cost, and would pay all damages caused on account of such deficiency, the measure of damages which the defendants would be entitled to recover for a failure of the furnace put in by plaintiffs to heat the house as agreed, would be the expense of putting in a new heater of the required capacity.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

For the appellants there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

For the respondents there was a brief by *Thompson, Harshaw & Thompson,* and oral argument by *J. C. Thompson.* They argued, among other things, that the defendants having failed to rescind the contract or to ask that the furnace be replaced by another, and having accepted and used the one furnished, their measure of damages was limited to the difference between the value of the property, if as represented, and its value as it actually is. *Herman v. Gray,* 79 Wis. 189; *Warder v. Fisher,* 48 id. 338–342.

The following opinion was filed October 11, 1898:

CASSODAY, C. J. The verified complaint is an ordinary complaint to enforce a mechanic's lien, and alleges, in effect, that the plaintiffs, as principal contractors, sold, furnished, and put into the house of the defendant *Thrall* the combination hot-air and hot-water heating apparatus, for the agreed price of $460, and extras to the amount of $5.25, making $465.25; that no part thereof had been paid except $300; that there was still due and unpaid $165.25,— and prayed for the customary judgment.

The defendants *Thrall* and wife answered, to the effect that the heater was put in the defendants' house, by the plaintiffs, under a written contract wherein they proposed, in effect, to furnish and place in the defendants' residence· a combination hot-water and warm-air heating apparatus, and No. 63 Prince Royal combination furnace, and would furnish and connect the same with the registers in the several rooms designated, the work to be completed October 1, 1895, unless delayed by the defendant or from some cause for which he was responsible; that the apparatus when completed was thereby guaranteed to heat the entire house to ·80°, and the bath rooms to 85°, in the coldest weather, with reasonable consumption of fuel; that the furnace, with all material furnished by the plaintiffs, should remain the property of the plaintiffs until the contract price should be fully paid, and the defendants should be liable for any damage to the apparatus after completion until that amount should be paid in full; that the price for the work should be $460, payable, $300 upon completion of the job, and $160 January 1, 1896; that it was therein further agreed that, should the furnace fail to meet the requirements as specified, the plaintiffs thereby agreed to replace the same with a heating apparatus that would fulfill the requirements, without extra cost to the defendants, and that the plaintiffs would pay for all damages caused on account of any deficiency in said furnace; that all work was to be done in a thorough, workmanlike manner; that on the same day the defendant, by his written indorsement on the back of such proposition, accepted the same, with all its conditions; that the plaintiffs failed and neglected to construct and erect such heating plant according to the terms and conditions of the contract; that, instead thereof, the one placed therein was not according to the contract, nor constructed in a good, workmanlike, and proper manner, and was entirely inadequate to heat the entire house to 80°, and the bath rooms to 85°, in the coldest weather,

with reasonable consumption of fuel, and was not completed until December 26, 1895.

In addition to the denials and such defense, the defendants alleged such failure to perform the contract, and the damages thereby sustained, as a counterclaim, and, among other things, that they had been damaged on account thereof, and on account of what it would cost them to construct and erect such heating apparatus according to the terms and conditions of the contract, and of the capacity and ability provided for in the contract, in the sum of $700. The plaintiffs replied to the counterclaim.

The cause was thereupon tried by the court without a jury. At the close of the trial, the court found, as matters of fact, in effect, that the written agreement was made as stated in the answer; that the work was done by the plaintiffs on the heater in a thorough, workmanlike manner so far as the workmanship was concerned; that the same was not completed until December 26, 1895; that the defendant *Thrall* has used the apparatus for two seasons, and was still using it, and had not removed the same, nor demanded or requested the plaintiffs to remove the same or replace it with another apparatus; that in January, 1896, and frequently thereafter, the defendant notified the plaintiffs that the apparatus did not fulfill the guaranty in the contract contained; that the apparatus when completed would not heat the house to 80°, and the bathrooms to 85°, in the coldest weather, without continuous and careful firing and unreasonable consumption of fuel; that with soft coal and continuous and careful firing it could be done, but that then some of the rooms would be heated to 90° and upward; that in January, 1896, and after the completion of the apparatus, the defendant agreed with the plaintiffs to accept the apparatus if it would heat the house to 75°; that the apparatus would not heat the house to 75° in the coldest weather without frequent and careful firing, and without an unrea-

sonable consumption of fuel; that, except in the coldest
weather, the apparatus served its purpose fairly well; that
the consumption of fuel by the apparatus was reasonable in
ordinary weather; that the price of the apparatus, as stated
in the contract, was $460, and that, if it had complied with
the requirements of the contract, its value would have been
that sum; that the value of the apparatus as constructed
was only $360, and the damage to the defendants for the
breach of warranty was $100; that $300 had been paid;
that the balance of $160, by the terms of the contract, fell
due January 1, 1896; that the plaintiffs furnished to the de-
fendants extras of the value and at the agreed price of $5.25,
which fell due January 1, 1897; that the facts found were
sufficient to authorize a lien; that the claim for a lien had
been duly filed; and that the plaintiffs were entitled to a
lien for $65.25 and interest and costs,— and ordered judg-
ment accordingly.

From the judgment so entered, the defendants *Thrall*
bring this appeal.

There can be no question but that the agreement was an
entire contract. By its terms, the plaintiffs were to receive
nothing until they completed the job. The trial court found
that they never did complete the job. Their right to re-
cover anything upon the contract necessarily depended upon
its full performance according to its terms. *Cook v. Mc-
Cabe*, 53 Wis. 254, 255, and cases there cited; *Moritz v. Lar-
sen*, 70 Wis. 569; *McDonald v. Bryant*, 73 Wis. 26; *Fuller-
Warren Co. v. Shurts*, 95 Wis. 606; *Pormann v. Walsh*, 97
Wis. 356.

Counsel contends that, when the defendant ascertained
that the furnace failed to perform as stipulated, he should
have rescinded the contract, or requested the plaintiffs to
remove the furnace or replace it by another, or removed it
himself and replaced it by another. But there is nothing
in the contract requiring the defendant to do any of those

things, nor to do anything else, except to pay as agreed, upon complete performance. It does not appear that the defendant ever waived his right to such full performance. True, the trial court finds that he agreed to accept the apparatus if it would heat the house to a certain less temperature than stipulated, but that it would not do so. Upon the facts found, we must hold that the plaintiffs can recover nothing.

The question recurs, What is the measure of the defendant's damages? The contract provides that, in case the furnace failed to perform as agreed, the plaintiffs would replace it with one that would fulfill such requirements, without extra cost, and would pay all damages caused on account of such deficiency. We agree with counsel for defendant that his damages are what it will cost the defendant to put in a heater of the required capacity. It appears from the evidence that it will cost the defendants to put in a heater to heat the house to 80° in the coldest weather, with reasonable consumption of fuel, $415, in addition to the furnace now in use, and upon which the defendant has paid $300, making the total cost $715. In other words, it will cost the defendant $255 more than he had agreed to pay. From this should be taken the $5.25 for extras mentioned, leaving a balance for $249.75, which amount, with interest from the time of the commencement of this action, the defendants are entitled to recover from the plaintiffs.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to enter judgment in accordance with this opinion.

A motion for a rehearing was denied December 16, 1898.