## BEURET v. STAHL ET AL.

[No. 10,596. Filed January 14, 1921. Rehearing denied June 10, 1921.]

1. SALES.—*Warranty.*—*Terms.*—In contracts of warranty the parties may fix the extent, terms and conditions of the warranty, and may impose such restrictions as they may mutually agree upon. p. 134.

2. SALES.—*Warranty.*—*Breach.*—*Return of Property.*—Where, the seller of a furnace specifically agreed "to remove the furnace and refund the money paid," if the furnace should fail to heat the buyer's house "as per guaranty," and the seller was unable to correct the fault, the buyer was not required to return, or offer to return the furnace as a condition precedent to a recovery of the purchase price.   p. 134.

3. SALES.—*Acceptance.*—*Evidence.*—*Use of Property.*—Where a furnace was built into, and became a part of, the buyer's house, the continued use by the buyer, after notice to the seller that the furnace failed to heat the house as warranted, was a circumstance to be considered on the issue as to whether the furnace had been accepted, but was not conclusive evidence of acceptance, the buyer not being required to forego the use of the furnace, which, though defective, was a part of his dwelling.   p. 134.

From Allen Circuit Court; *Owen N. Heaton,* Special Judge.

Action by Louis J. Beuret against William G. Stahl and others. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*P. V. Hoffman,* for appellant.

*Harry H. Hilgemann,* for appellee.

REMY, C. J.—On March 30, 1917, appellant entered into a written contract with appellees, by the terms of which appellant sold to appellees, and agreed to install in their dwelling house, a warm air furnace.   Appellees were to pay for the furnace a consideration of $160, one-half of which sum was to be paid when the furnace was installed, and the remainder by a note payable at a later date.   On April 24, 1917, appellees made a cash payment of $80, and executed their note for a like sum due February 1, 1918.   The contract contained the following warranty:

"We guarantee that the furnace will warm all rooms to which complete run of pipes has been made by us to a temperature of seventy degrees Fahrenheit in zero weather, the owner to furnish a suitable chimney flue, proper fuel and to obey our

directions. * * * In case the furnace fails to heat house as per guarantee above, and we are unable to correct the fault, we will remove the furnace and refund the money paid."

The furnace when tested proved to be too small for the size of house to be heated, and did not meet the requirements of the warranty, though appellees had furnished a suitable chimney flue, and in operating the furnace had used proper fuel and had obeyed the directions of appellant. Appellant was notified by appellees of the failure of the furnace to meet the requirements of the warranty, and in response made some alterations, but did not, and could not, correct the defect. Whereupon appellees notified appellant that, in accordance with the terms of the contract, he should remove the furnace. Appellant did not remove the furnace, nor did he refund the cash payment of $80. The furnace remained in the house, and was used by appellees until the date of the trial.

The note given for the balance of the contract price of the furnace was not paid at maturity, and appellant commenced this action, his complaint being based on the note and the contract for the installation of the furnace. Appellees filed an answer in denial; also a counterclaim founded upon the contract of warranty demanding judgment for the amount of the cash installment of the purchase price paid.

By a special finding the court trying the cause found the facts hereinbefore set out, and by conclusions of law stated that the law was with appellees, and rendered judgment against appellant for the amount demanded by appellees in their counterclaim.

Though presented in various ways, the only questions involved in this appeal, as suggested by appellant in his brief, are: (1) Were appellees required, under the contract of warranty, to return or offer to return the

furnace, before they could maintain an action to recover the purchase money they had paid? (2) Did appellees, by their continued use of the furnace after giving appellant notice to remove it, thereby accept the furnace and affirm the contract? Appellant contends that each of these questions must be answered in the affirmative, and that this cause must, therefore, be reversed.

It is well settled, that in contracts of warranty the parties may fix the extent, terms and conditions of the warranty, and may impose such restrictions as they may mutually agree upon. *Nave* v. *Powell* (1911), 52 Ind. App. 496, 96 N. E. 395. By the terms of the warranty under consideration, appellant had specifically agreed to "remove the furnace and refund the money paid," if the furnace should fail to heat the house "as per guaranty," and appellant was "unable to correct the fault." It is clear that the contract which is the basis of appellees' cross-action, and which is controlling, did not require appellees to return or offer to return the furnace.

The furnace in controversy was built into, and was a part of appellees' house, and its continued use by appellees was a circumstance which it was proper for the trial court to consider on the issue as to whether or not the furnace had been accepted by appellees; but, under the facts in this case, is not conclusive evidence of acceptance. Appellees were not required to forego the use of the furnace which, though defective, was at the time a part of their dwelling. *Manitowoc Steam Boiler Works* v. *Manitowoc Glue Co.* (1903), 120 Wis. 1, 8, 97 N. W. 515; *American Foundry, etc., Co.* v. *Board of Education* (1907), 131 Wis. 220, 232, 110 N. W. 403; *Williams* v. *Thrall* (1898), 101 Wis. 337, 76 N. W. 599.

Judgment affirmed.