John Pritzlaff Hardware Co. vs. Berghoefer and others.

JOHN PRITZLAFF HARDWARE COMPANY, Appellant, vs. BERGHOEFER and others, Appellants, and MENOMINEE FALLS QUARRY COMPANY, Garnishee, Respondent.

*May 17 — June 2, 1899.*

*Appeal: Findings: Building contracts: Arbitrators: Conditions precedent: Garnishment: New trial after judgment.*

1. When there is no clear preponderence of the evidence against the findings of fact made by the referee and confirmed by the court, the conclusions reached thereon will not be disturbed on appeal.

2. It is competent for a contractor to bind himself to perform the contract not only according to plans and specifications, but also to the satisfaction and acceptance of a designated referee, and a contract so made will be enforced according to its terms, as a condition precedent to recovery, unless dispensed with by the parties themselves, or unless the acts of the nominated referee are collusive, fraudulent, arbitrary, or unreasonable, or due to clear mistake of the facts on which his judgment is predicated.

3. Where a contractor has not shown completion of his contract according to its terms, or any excuse therefor, or any substantial completion of the structure contracted for, or that the owner has taken possession of the same and put it to the use intended, he cannot re-

John Pritzlaff Hardware Co. vs. Berghoefer and others.

cover, and a plaintiff in an action on a debt due him from such contractor has no greater rights against the owner, summoned as garnishee, than the contractor.

4. A motion for a new trial made after judgment cannot be considered on an appeal from the judgment.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

Plaintiff sued Berghoefer & Lupinski for a debt, and garnished the respondent. The respondent answered, setting forth the making of a contract between it and the principal defendants for the construction of a certain derrick and hoisting plant at its quarry, at an agreed price of $4,100, alleged nonperformance thereof, and denied indebtedness, except for a small amount of extras aggregating some $90, against which it counterclaimed certain labor and payments to and for said defendants, amounting to some $136.

The principal defendants interposed answer, in which they set up the making of said contract and substantial performance thereof with certain extras, and alleged indebtedness of the garnishee in the sum of about $4,200. After issue joined, Berghoefer & Lupinski made a voluntary assignment for the benefit of creditors to *George J. Roemer,* who, on his own application, was joined as a defendant. Certain subcontractors of Berghoefer & Lupinski, who had filed mechanics' liens, were interpleaded, but their rights and contentions are not material to this appeal.

It appeared that March 13, 1893, the principal defendants made a proposition to erect a derrick for the garnishee, with specification of size of timbers, ropes, etc., and to erect a power house, also specified as to dimensions, size of timber, and other construction, and to place therein a boiler and engine, both specified as to dimensions, and other specified machinery. To this the garnishee responded, after some conversation, accepting a proposition to erect " one twenty-ton hoisting derrick and pump, together with all necessary

material and building, except as herein specified," as follows: "The plant you propose to furnish, including all necessary buildings, is to be complete in all particulars, whether details are specifically set forth in your proposition or not, and the plant, together with all the material and labor expended upon the same, to be subject to the inspection, satisfaction, and acceptance, after such inspection, when complete and in running order, by Mr. A. H. Hadfield; the plant, in all particulars, to be turned over complete and in running order to this company on or before May 1st, 1893; when turned over and accepted as aforesaid, we to pay for the same the sum of $2,000.00, and the balance of $2,100.00 in sixty days thereafter, making the total contract price $4,100.00," — which modified proposal was assented to by the defendants, who proceeded to work thereon.

A large amount of testimony was taken, whereby it appeared that substantial completion was claimed to have been accomplished by the principal defendants some time in July, 1893, but not until September was an offer for final test made. Claim was made on the part of the defendants of acceptance by the garnishee's superintendent, Hadfield, named in the proposition as a sort of arbitrator, which was strenuously denied. The garnishee also insisted that the plant had never been completed so as to at all comply with the requirements of the contract; and it was undisputed that it had stood, from the time the defendants had left it up to the time of trial, unused by the garnishee.

The referee found that the principal defendants were engaged in the business of millwrights, machinists, and builders of machinery of this class; that the proposal contained in the letter of March 13th, as modified by the letter above quoted, from the garnishee to the principal defendants, was accepted, and formed the contract between them; that the plant was not finished until September 1, 1893, but that both parties were so responsible for delays that the responsibility

could not be apportioned; that on demand of the defendants, in September, Hadfield refused to attend a test, for the reason that the plant had not been constructed in accordance with the terms of the contract. And the referee further found that the plant had not been erected to the satisfaction of said Hadfield. The referee also found that the frame of the engine was broken August 10th in an attempt to operate the plant by the contractors, and that such breaking was due to the insecure foundation of the engine, and failure to safely secure and anchor the same; that the defendants have failed to erect a twenty-ton hoisting derrick as called for by their contract; that the hoisting machinery is insufficient in strength, and improperly constructed, to perform the work required by the contract; that the building is not suitable for a power house for the plant in question, being too small for proper arrangement of the machinery; that the machinery is not safely or properly arranged, and no view of the quarry and derrick is afforded to the operator; that the building is not battened as required by the contract; that it does not contain any suitable or proper means of ingress or egress to and from the second story of said building, and that the machinery, as constructed, is unfit for the performance of the work for which it was furnished; that the garnishee has not, either through said Hadfield or any other officer or agent, waived the performance of any condition of the contract by the defendants, nor accepted the plant, and that a small indebtedness from the garnishee to the defendants for extras is more than offset by an account due it from the defendants; that the garnishee did not at the time of the service of the summons, nor at the time of the finding, hold title or possession of any property belonging to the defendants, or either of them, or in which either of them was in any way interested, except their interest in the derrick plant.

The court adopted and confirmed the finding and report

of the referee, and entered judgment in favor of the garnishee. Thereafter the principal defendants moved for a new trial on the ground of newly discovered evidence, which motion was overruled. The principal defendants, together with their impleaded assignee and the plaintiff, filed exceptions to the findings and report of the referee, and also to the order confirming the same and ordering judgment, and to the denial of the motion for a new trial. Both appeal from the judgment.

For the appellants there was a brief by *J. A. Eggen*, attorney for the defendant appellants, and *Nath. Pereles & Sons*, attorneys for plaintiff, and oral argument by *Mr. Eggen*.

*Sam'l Rosendale*, for the respondents.

Dodge, J. After thorough examinations of the evidence, we do not find any clear preponderance thereof against the findings made by the referee and confirmed by the court. True, upon many questions there is a sharp conflict of evidence or opinions; but from such conflict it is essentially the province of the trial court to extract the facts, and, as we have so often said, this court will not disturb the conclusions reached thereon, except when the preponderance of the evidence has very clearly been disregarded. No adequate benefit can result from preserving in an opinion a discussion of evidence, the conclusions of the trial court on which are concurred with by us; and we proceed to a consideration of the law of the case, as applied to the facts presented by the findings.

The contract here under consideration bound the principal defendants not only to construct the hoisting apparatus according to its specifications, but also to the satisfaction and acceptance of Hadfield, who, the court finds, has at all times been dissatisfied, and has refused to accept. The evidence, though in conflict, does not clearly preponderate

against that finding, which therefore is a verity in this case. This court, in a line of decisions from *Baasen v. Baehr*, 7 Wis. 516, through *Hudson v. McCartney*, 33 Wis. 331; *Wendt v. Vogel*, 87 Wis. 462; *Pormann v. Walsh*, 97 Wis. 356, to *Burnham v. Milwaukee*, 100 Wis. 55, and *Coorsen v. Ziehl, post*, p. 381, has consistently held that such agreements are entirely competent for the parties to make, and will be fully enforced according to their terms, as conditions precedent to recovery, unless dispensed with by the parties themselves, or unless the acts of the nominated referee are collusive, fraudulent, arbitrary, and unreasonable, or due to clear mistake of the facts on which his judgment is predicated. Nothing of the sort is shown here. The utmost that defendants' testimony tends to show is that the result is a fairly substantial performance of the contract, and perhaps ought to satisfy Hadfield,— though the findings even as to that are adverse. That conclusion, even if established, would not suffice. The question is, Has the arbitrator honestly reached an adverse conclusion? not, Would the court do so upon the evidence? Exceptional cases have presented themselves wherein the above-stated rule has not controlled the rights of the parties, as in *Laycock v. Moon*, 97 Wis. 59, where it was held that the right of disapproval must be exercised promptly while the work was in progress, so that the materials or the manner of construction might be changed to meet the architect's views. That was a case, however, where the work was to be done under the eye and subject to the direction of the architect; and the defects of material and construction were of kinds as to which the architect had assumed to direct in the specifications, and to have full knowledge, such as the brick and mortar used in the walls, and the manner of laying them up. The contract before us presents a very different situation. This is a contract for *results*, as to which the details and manner of construction are comparatively unimportant, and are especially within the knowl-

edge of the contractor, who assumes expert understanding as to how those results can best be accomplished. It does not appear that either Hadfield or any of defendant's officers had knowledge of what would accomplish or defeat the efficacy of the plant and machinery, as a twenty-ton hoisting plant suitably adapted to the situation. They must rely on the contractor, and measure his conduct by the whole plant, when, completed, they attempted to use it.

Neither can the parties here be brought within the doctrine of another class of cases, where, although the contractor had not complied strictly with all the requirements, he had substantially completed the structure contracted for, and the owner had taken possession of the same and put it to the uses intended, thereby accepting the benefits of the contractor's work. There the contractor has often been allowed to recover on the basis of *quantum meruit* or *quantum valebat*. In the case at bar, however, there is, according to the findings, no substantial completion. The building and apparatus are inadequate and unfit for the purpose intended, not alone in details which might be remedied, but in general construction and working. In addition, the owner has not gone into possession or enjoyed any benefit of it. The device stands unused upon its premises, not only without benefit to it, but doubtless cumbering the ground.

The defendants, not having shown completion of their contract according to its terms, nor any excuse therefrom, are subject to the rule of law above stated, and have no right of recovery against the garnishee. The plaintiff can have no greater rights, and the judgment dismissing the garnishee was correct.

The motion for a new trial was made after judgment. It cannot, therefore, be considered upon an appeal from the judgment, which is all we have before us. *Morris v. Niles*, 67 Wis. 341; *Reed v. Madison*, 85 Wis. 667, 673.

*By the Court.*— Judgment affirmed.