HALSEY, Appellant, vs. WAUKESHA SPRINGS SANITARIUM COMPANY and another, Respondents.

*May 3—June 23, 1905.*

*Building contracts: Architects: Conditions precedent: Mechanics' liens: Description of premises: Destruction of building: Enforcement of lien.*

1. Where complete performance of an entire contract to do work upon a building to be supplied by the owner or his employee is prevented by the total destruction of that building, such completion is excused, and the contractor may recover pay at the contract price for the portion of the work done.

2. An agreement that an architect's certificate shall be a condition precedent to a contractor's right to payment is deemed and construed to embody the condition that the architect shall exercise his function as arbitrator honestly and in good faith.

3. One who performs his contract may recover his pay therefor, notwithstanding an agreement that a specific architect's certificate shall be a condition precedent to payment, if it appear that he is disabled from obtaining the architect's certificate by collusive, fraudulent, arbitrary, or unreasonable refusal by the architect, or if the issuing of the certificate is prevented by act of the owner.

4. Where, after a contractor had nearly completed the plumbing work on a building in process of construction and repair by the owner, the building was destroyed by fire, and, upon presentation of the contractor's final bill to the architect, whose certificate was stipulated to be a condition precedent to payment, the architect assured the contractor that his work was all satisfactory except in a few unimportant details, but refused to give him a certificate, such conduct of the architect is arbitrary and unjust, and, in the legal sense, fraudulent.

5. In such case, the fact that the owner had by withdrawal of the contract from the architect disabled him from exercising his function, while it might absolve the architect from any conscious or intentional wrong or fraud against the contractor, yet, being the act of the owner preventing the issue of a certificate, it excused the contractor from producing the architect's certificate.

6. Where a claim for a mechanic's lien and the complaint in an action to foreclose the same described a twelve-acre tract as that on which the lien was demanded, while the evidence showed that only one acre thereof could be so subject, the statutory requirement of a claim for lien describing the land is satisfied.

7. In such case it is the duty of the trial court to ascertain, by proof, one acre within the tract so claimed which should contain the building and be subjected to the lien.

8. Where a mechanic's lien has once attached to land it is not detached by the destruction of the building which the owner has impliedly contracted should remain in existence to enable the lien claimant to complete his contract.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

In 1901 the respondent, having in process of construction and repair a building, entered into contract with the appellant to do and furnish the plumbing work and material thereon to an amount of $4,000, according to certain specifications. That contract contained the usual clauses, naming

an architect to act as agent of the owner, requiring the performance of the contract to his satisfaction, that he should be final arbitrator, and that the contract price, as also the price of any extras, should be paid on certificates from the superintendent at the rate of eighty-five per cent. of the work; the remaining fifteen per cent. to be held as security for completion of the work, and to be paid or applied under the direction of the superintendent. After the building was nearly completed and appellant had performed all the contract work except about $228, besides some $1,300 of extra work, the building burned down, by accident, on December 2, 1901, so as to render the completion of plaintiff's contract impossible. His work up to about November 20th had been approved from time to time, and certificates issued for eighty-five per cent. thereof, and duly paid. After the fire a bill for the total was presented to the architect, who refused to pass upon it in any way, saying that plaintiff must deal with the managing officer of the company, and thereafter persisted in such refusal, although he testified upon the trial that all of the work done accorded with the contract, with exception of a mixing table rejected as not satisfying specifications, and that the extras were satisfactory. This action was brought to enforce a mechanic's lien for the price of the extras and the amount of the contract, less the value of the parts thereof which had not been performed at the time of the fire, aggregating about $78. The answer claimed additional remission in the sum of $175 for one sink entirely omitted and for said mixing table. The claim for lien and the complaint both demanded a lien upon a twelve-acre tract, correctly described, upon which the building was situated. It appeared, however, that the premises were within a city, and some attempts were made to amend the claim and complaint so as to describe a specific acre within said twelve. The last attempt, seeking to make such description by metes and bounds, was made after decision but before judgment, and was denied by the court. The court held that

the architect's certificate was a condition precedent to plaintiff's right to payment, and also held that the description of the premises was too indefinite, and rendered judgment dismissing the complaint and the claim for lien.    From that judgment the plaintiff appeals.

For the appellant there was a brief by *C. H. Hamilton,* attorney, and *Timlin & Glicksman,* of counsel, and oral argument by *W. H. Timlin.*

For the respondents there was a brief by *Tullar & Lockney* and *Ryan, Merton & Newbury,* and oral argument by *D. S.* *Tullar.*

DODGE, J.  1. When complete performance of an entire contract to do work upon another's building is prevented by the total destruction of that building, such completion is excused, and the contractor may recover pay at the contract price for the portion of the work done.    *Cook v. McCabe,* 53 Wis. 250, 10 N. W. 507; *Vogt v. Hecker,* 118 Wis. 306, 309, 95 N. W. 90.  The present case falls clearly within this rule, for plaintiff was only to do work upon a building to be supplied by the owner or its employees.

2. The efficacy of an agreement that an architect's certificate shall be a condition precedent to a contractor's right to payment has often been declared.    *Coorsen v. Ziehl,* 103 Wis. 381, 79 N. W. 562; *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis. 359, 79 N. W. 564; *Mindeman v. Douville,* 112 Wis. 413, 88 N. W. 299.    Such an agreement is, however, deemed and construed to embody the condition that the architect shall exercise his function as arbitrator honestly and in good faith.    He usually is, as in the instant case, the employee and agent of the owner, and, but for such a condition, can, if he will, absolutely deprive the contractor of all pay for his work, however exactly it may comply with the contract. An agreement to submit the question of pay or no pay to the mere whim, or worse, of one in an opposing interest is too

absurd for belief that parties' minds met thereon.    Hence the
rule is well established that he who performs his contract may
recover in court his pay therefor, notwithstanding such agree-
ment, if it appear that he is disabled from obtaining the archi-
tect's certificate by collusive, fraudulent, arbitrary, or unrea-
sonable refusal by the latter.    *Hudson v. McCartney,* 33
Wis. 331, 341; *Bentley v. Davidson,* 74 Wis. 420, 424, 43
N. W. 139; *Wendt v. Vogel,* 87 Wis. 462, 465, 58 N. W.
764.    More obviously still is one excused if the issue of the
certificate is prevented by act of the owner.    *Bannister v.*
*Patty's Ex'rs,* 35 Wis. 215, 225; *Ashland L., S. & C. Co. v.*
*Shores,* 105 Wis. 122, 132, 81 N. W. 136; *Boden v. Maher,*
105 Wis. 539, 547, 81 N. W. 661; *Mindeman v. Douville,*
*supra; McDonald v. Patterson,* 186 Ill. 381, 384, 57 N. E.
1027.

The evidence as to what transpired after the fire between
plaintiff, the architect, and Dr. Caples, the defendant's man-
aging officer, is not in dispute.    Upon presentation of plaint-
iff's final bill the architect assured him that his work was
all satisfactory except a mixing table, but said he could not
give certificate because Dr. Caples had withdrawn from him
the contract.    The architect testified that after such with-
drawal of the contract he exercised no authority under it and
so stated to plaintiff.    At the same time he told plaintiff he
must see and deal with Caples.    Thereupon plaintiff applied
to Caples for payment, was met with no suggestion that a
certificate was needed or would vary the situation, but was
told the defendant would compromise by allowing eighty-five·
per cent. of the total bill, and by giving plaintiff a contract
on rebuilding, and if that were not accepted they would keep·
him out of his money as long as they could.    There was no
claim that the defendant did not legally owe the whole
amount, nor that Caples needed the certificate or any infor-
mation from the architect to assure him of the work done or
the amount due, of which it appears the architect had already

informed him. We can entertain no doubt that the conduct of the architect in refusing a certificate was arbitrary, unjust, and, in the legal sense, fraudulent. It was the architect's duty, as between plaintiff and defendant, to exercise his judgment and make a decision as to whether plaintiff was or was not entitled to the sum demanded, and, if not, then to what sum. His errors in performing such duty might be unassailable. When, however, he refused to act—refused to exercise his agreed jurisdiction—there was no room for mere error. It constituted, not a wrong decision, but an arbitrary and unjust refusal of any decision. If the architect may be absolved from any conscious or intentional wrong or fraud against plaintiff, it can only be because the withdrawal of the contract disabled him from exercising his function. That brings us at once in contact with the rule above stated—that defendant's own acts preventing the issue of such certificates will, *a fortiori,* excuse plaintiff from producing one. The trial court clearly erred in holding that absence of the architect's certificate, under the circumstances, was any obstacle to plaintiff's recovery.

The item of $150 deduction for a mixing table rejected by the architect as not in accord with specifications cannot be allowed, although there is much evidence to dispute the architect's decision. On that subject he did act within his agreed jurisdiction and his ruling is conclusive. There is no evidence to support any other deductions from the amount demanded by the complaint.

The fact that the claim for lien filed, as also the complaint, described a twelve-acre tract of land as that upon which lien was demanded, while by the evidence it appears that only one acre can be so subject, is urged as an obstacle to recovery. In this contention it is apparent that counsel have confused rulings made in different decisions. Thus in *Security Nat. Bank v. St. Croix P. Co.* 117 Wis. 211, 94 N. W. 74, and *Dusick v. Green,* 118 Wis. 240, 95 N. W. 144, the right to

a lien was defeated because the plaintiff had failed to file
within the statutory six months any claim for or notice òf
lien containing a description of any parcel of land whatever;
hence the condition precedent to a lien demanded by the stat-
ute was lacking.  In those cases the attempted description
was such as not to define any parcel of land which could be
segregated on the ground so that a purchaser could know
whether any given parcel which he might desire to buy was
claimed to be subject to the lien or not.  In other cases, how-
ever, where, as in this, a fully defined piece of ground was
specified as that upon which the lien was claimed, but was
found to exceed the amount upon which it could be sustained,
it has been held to be the duty of the trial court, as in the
case of other excessive demands, to award judgment for that
portion of the whole tract to which plaintiff is entitled under
the evidence.  *McCoy v. Quick,* 30 Wis. 521; *Dusick v.
Green, supra.*  Here the tract of land claimed is in no wise
ambiguous.  It is the entire twelve acres.  Hence the statu-
tory requirement of a claim for lien describing the land, filed
within six months, was satisfied; and although the complaint,
following the notice, claimed the whole, it was the duty of
the court to ascertain by proof one acre within said tract so
claimed which should contain the building and be subjected
to the lien.  Owing to the ruling of the court that this could
not be done, there is not evidence in the record to enable us
to direct a judgment for any specific acre, and that subject
will need to be referred to the trial court to take such further
evidence thereon as may be necessary to enable it to embody
an accurate description in its judgment.

The question whether a lien can be sustained against the
land after the building on which the work was done has been
destroyed is forced on our notice by *Goodman v. Baerlocher,*
88 Wis. 287, 60 N. W. 415, although the point is not raised.
That case has been understood by some as declaring our adop-
tion of what may be called the Pennsylvania theory—that a

mechanic's lien primarily has no application to the land; that it attaches directly only upon the structure or building on which the mechanic works, and reaches the land only because of the inseparability of the building from the land to which it is annexed. The corollary deduced from such theory is that whenever the building goes out of existence the lien goes with it, because then there exists no connecting link between the work or materials supplied by the claimant and the ground. This view seems also to involve the proposition that the lien does not spring into existence upon the doing of the work, but only either when the structure comes into existence, or thereafter upon the filing of proper claim. *Presbyterian Church v. Stettler,* 26 Pa. St. 246; *Wigton & Brooks's Appeal,* 28 Pa. St. 161; *Linden S. Co. v. Rough Run Mfg. Co.* 158 Pa. St. 238, 27 Atl. 895. As conceded in the *Goodman Case,* this view is repudiated by most other courts under statutes resembling our own. *Freeman v. Carson,* 27 Minn. 516, 8 N. W. 764; *Clark v. Parker,* 58 Iowa, 509, 12 N. W. 553; *Steigleman v. McBride,* 17 Ill. 300; *Sontag v. Brennan,* 75 Ill. 279; *Paddock v. Stout,* 121 Ill. 571, 13 N. E. 182; *Stuart v. Broome,* 59 Tex. 466. It would appear quite doubtful whether the court did declare itself in favor of the Pennsylvania rule in the *Goodman Case,* or rested its decision on the other apparent ground, namely, efficacy of complete breach by the principal contractor to prevent subcontractor's lien, on authority of *Malbon v. Birney,* 11 Wis. 107; but apparently the latter interpretation has been repudiated in *Seeman v. Biemann,* 108 Wis. 365, 379, 84 N. W. 490. Whatever construction be given the *Goodman Case,* however, we deem it clear that the grounds on which the Pennsylvania rule rests have no existence under our lien statutes and have been repudiated in at least two recent cases in this court. *Viles v. Green,* 91 Wis. 217, 64 N. W. 856; *Fitzgerald v. Walsh,* 107 Wis. 92, 82 N. W. 717. There it is held that the mechanic's lien arises by law upon the doing

of work or furnishing materials in case construction of a building be actually commenced, and is not dependent for original existence either upon the filing of a claim or upon the construction of a building to which it must first attach in order to reach the land. In the latter of these cases the architect's lien was held to have attached to the land the moment excavation for the building commenced. Clearly, if the lien may fasten on the land before any structure exists thereon, it may persist after any such structure disappears. Several of the provisions of our statute (sec. 3314, Stats. 1898) are so inconsistent with the necessity of any structure for a lien to fasten upon as to preclude belief in any such legislative idea—notably those of excavating, dredging, road repairing, and the like. We conclude that the Pennsylvania rule has no place under our statute, and that plaintiff's lien, having once attached to the land, was not detached by the destruction of the building which defendant had impliedly contracted should remain in existence to enable completion of plaintiff's contract.

*By the Court.*—Judgment reversed, and cause remanded with directions to take further proceedings and render judgment in plaintiff's favor in accordance with the foregoing opinion.